**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**THOMAS M. SLEVIN,**

　　　　**Plaintiff,**

**vs.**　　　　　　　　　　　　　　　**Case No. 4:06cv390-RH/WCS**

**JAMES McDONOUGH,
ORLESTER DICKENS,
J. MOORE, JOHN HANCOCK,
and MARY DAYAN,**

　　　　**Defendants.**

_____/


## REPORT AND RECOMMENDATION

　　　　Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, filed a second

amended civil rights complaint, doc. 10, under 42 U.S.C. § 1983 to which Defendants

responded by filing a special report, doc. 28, as required by court order.  Doc. 28.  The

parties were advised that the report would be treated as a motion for summary

judgment, the special report was docketed as a motion for summary judgment, doc. 30,

and Plaintiff was advised of his burden in opposing summary judgment under Fed. R.

Civ. P. 56.  Doc. 29.  Plaintiff was also warned that final judgment could be entered

without a trial and the moving party's evidence accepted as true if not contradicted by

sworn affidavits under Rule 56. *Id.* Furthermore, Plaintiff was specifically advised of Rule 56.1, Rules for the Northern District of Florida:

> The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, in the format set forth above.
>
> All material facts set forth in the statement [of uncontested facts] required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party.

N.D. Fla. Loc. R. 56.1(A).  Defendants included a statement of facts section in the summary judgment motion.  Doc. 28, p. 4, *et seq.*  Plaintiff was required to, in addition to submitting other materials permitted by FED. R. CIV. P. 56, submit a separate statement of facts as to which Plaintiff contends there *is* a genuine issue of fact for trial. N.D. Fla. Loc. R. 56.1(A).  Not only has Plaintiff failed to respond in any way to the summary judgment motion, that last document received by Plaintiff was the service copies of his second amended complaint, received in December of 2006.  While it could be presumed that Plaintiff has abandoned this litigation, the merits of the summary judgment motion will be addressed.

**Allegations of the second amended complaint, doc. 10**

Plaintiff complains that inmates at Wakulla Correctional Institution were, at one time, permitted to lock their sliding cell doors when leaving, which Plaintiff alleged protected inmate property from theft.  Additionally, when using the toilet, inmates could slide the door nearly closed for at least some slight privacy.  Finally, if an inmate felt threatened by another inmate, he could retreat to his cell and lock his door while waiting

for an officer to come resolve the situation.  Doc. 10, p. 10.  In early 2006, a new policy

went into effect that cell doors must remain "locked open" from 5:30 a.m. through 11:00

p.m. during weekdays and until 1:00 a.m. on the weekends.  *Id.*, at 10-11.  Plaintiff

complains that the inability to close the door while using the toilet is degrading and

embarrassing, that he has had personal property stolen from his cell, and cannot block

out excessive noise when trying to study, write letters, or even sleep.  *Id.*, at 11-12.

Plaintiff fears that if threatened by another inmate on the wing, he cannot retreat to his

cell for safety.  *Id.*, at 12.  Plaintiff alleges due process, First, and Eighth Amendment

violations, including violation of his right to be free from cruel and unusual punishment,

and violation of rights under the Religious Land Use and Institutionalized Persons Act of

2000.  *Id.*, at 15-17, 19-20.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d

265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is

"material" if it could affect the outcome of the case.  Hickson Corp. v. Northern

Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material

facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S.

574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  The court must decide "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a

genuine issue to be tried, using the same format.  Finally, the Local Rule provides that the movant's properly filed statement of undisputed facts will be deemed to be admitted unless controverted by the opposing party in the manner specified by the Rule.  *See* Jones v. Gerwens, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (determining that plaintiff's failure to controvert defendants' statement of undisputed facts filed in compliance with a similar local rule of the Southern District of Florida constituted an admission that such facts were not disputed for summary judgment purposes).

**The unrebutted Rule 56(e) evidence**

On May 23, 2006, a memorandum was issued from Defendant Dayan, the Assistant Warden of Operations at Wakulla Correctional Institution, to the inmate population in T-Dormitory concerning the sliding cell door policy.  Doc. 28, ex. B (ex. 28-2, p. 5).[1]  The memorandum provided the following:

> Effective immediately all sliding doors are to be secured in the open position at 5:30 am each morning and remain in the "locked open" position until 11:00 pm when they will be secured in the "locked" closed position. Exceptions will be:
>
> - On Friday and Saturday nights when they will be secured in the closed position at 1:00 a.m.
>
> - On the evening before Holidays when they will be secured in the closed position at 1:00 a.m.
>
> You may use a blanket to place over your lap when using the restroom for privacy issues; however, you may not bock the door way to your cell with any item.

---

[1] Hereafter, all references to exhibits are to those attached to document 28. References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a *pro se* litigant will not have access to the court's electronic docket.

Ex. B (ex. 28-2, p. 5).

Plaintiff initiated the Department of Corrections' grievance procedures to challenge the new cell door policy and proceeded through all three steps of the grievance process.  Exhibits C, D, E, F, and G (ex. 28-2, pp. 6-17).  Plaintiff then began a separate round of grievances concerning his belief that his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) were being violated.  Ex. H (doc. 28-2, p. 18, *et seq.*).  In presenting that claim to the Department, Plaintiff outlined eight separate problems, one of which was again the cell door policy.  Ex. H (doc. 28-2, p. 19).  Defendants have presented evidence that Plaintiff brought that challenge only through two of the three grievance steps; Plaintiff never submitted the final grievance appeal to the Secretary concerning this RLUIPA claim.  Exhibits H, I, and J (doc. 28-2, pp. 18-23).  All of Plaintiff's grievances were denied.  Doc. 28, pp. 5-6; Exhibits C-J.

Defendants presented the affidavit of Defendant John Hancock, the Warden at Wakulla Correctional Institution.  Ex. K (doc. 28-2, p. 24).  Defendant Hancock explained that during May of 2006, the Regional Director for Florida prisons in Region One issued a directive for the Wardens to implement a practice regarding the position of cell doors.  Ex. K (doc. 28-2, p. 25).  Defendant Hancock states in the affidavit that the May 23, 2006, memorandum represented what is still the "current practice at Wakulla Correctional Institution."  *Id.*  The memorandum states the policy for inmates at Wakulla, and is "not a rule implemented by the Department of Corrections."  *Id.*  Cell doors are "closed during sleep hours."  *Id.*

Plaintiff was housed in a "T Building, which consists of single cell rooms."  Ex. K (doc. 28-2, p. 25).  Plaintiff's security level under the Department's procedures permits Plaintiff to be housed in a single cell room.  *Id.*  The "doors in the T buildings are mechanically operated sliding doors" and not the type of doors that swing open.  *Id.* "The doors are opened by the control room security staff."  *Id.*

Defendant Hancock states that the reasons behind the policy requiring cell doors to remain in a locked, open position "during certain periods of time during the day are for security reasons."  Ex. K (doc. 28-2, p. 25).  If the doors remain closed throughout the day, staff have "to constantly be opening the doors" at each request and this takes them away from other assigned duties.  *Id.*  The open cell door policy enables inmates to enter or leave their cells faster "without diverting staff from assigned duties."  *Id.*

Additionally, the open cell door policy "enhances safety of correction's staff and inmates."  Ex. K (doc. 28-2, p. 25-26).  During checks, if staff enter and the cell door is closed, staff could be locked in a cell with inmates who might over-power staff.  Ex. K (doc. 28-2, p. 26).  If the control room was did not observe the situation at that moment, staff could be injured or worse.  *Id.*  If an inmate is assaulted or harmed by another inmate in the cell, having an open door allows staff to respond faster and appropriately handle the situation.  *Id.*

Inmates are not in their cells during the day as they are "usually at work, in programs, at the recreation fields, or eating at the chow hall."  Ex. K (doc. 28-2, p. 26). Furthermore, an inmate using the toilet in T building is "not easily viewed by other inmates."  *Id.*  The toilets do not directly face the door, but face the back of the cell.  *Id.* The memorandum advised inmates that they may use a blanket over their laps for

privacy when using the restroom.  *Id.*  A person would have to stand in the doorway of a cell to have clear visibility, and that is not "normally the case when officers are making rounds."  *Id.*

To safeguard inmate property, all inmates in T building are "provided with steel lockers to hold their personal items."  Ex. K (doc. 28-2, p. 26).  Inmates may purchase a combination lock to further secure their property.  *Id.*  Defendant Hancock is unaware of any increase in thefts of inmate personal property since implementing the new cell door practice.  *Id.*

Defendant Hancock also states that he is unaware of any increase in assaults on inmates since May of 2006.  Ex. K (doc. 28-2, p. 27).  Indeed, the new practice cuts down the response time for staff if an assault does occur.  *Id.*  Previously, staff had to wait for security in the control room to open the doors before responding.  *Id.*  Control

As for the noise level, Defendant Hancock reports that T building houses approximately 85 men.  Ex. K (doc. 28-2, p. 27).  There will be some level of noise with that many people.  However, the "noise level in the T building is less than the noise level in open bay dorms."  *Id.*  Inmates in open bay dormitories do not have metal doors and cannot retreat into a cell at all.  *Id.*

Defendant Dayan, the Assistant Warden of Operations at Wakulla C.I. also submitted an affidavit.  Ex. L (doc. 28-2, p. 29).  She states her understanding that before the May 23, 2006, memorandum was posted, "there was no active practice in place regarding the positioning of cell doors in the T buildings."  Ex. L (doc. 28-2, p. 30).  Defendant Dayan reiterated the same security reasons for the policy as stated by Defendant Hancock.  *Id.* (doc. 28-2, pp. 30-31).

As additional evidence, Defendants submitted the affidavit of James Upchurch, the Bureau Chief of Security Operations for the Florida Department of Corrections.  Ex. M (doc. 28-2, p. 34).  He reiterates that it is an institutional practice and not a rule of the Department of Corrections to have cell doors in a locked and open position during daytime hours.  Ex. M (doc. 28-2, p. 34).  This practice is optional for "facilities dormitories housing non-confinement, yet high security, inmates."  Ex. M (doc. 28-2, pp. 34-35).  The policy provides for "movement amongst the inmates in the dorms, yet allows correctional officers to respond quickly to emergencies or incidents."  Ex. M (doc. 28-2, p. 35).  Mr. Upchurch reiterates that the practice enhances the safety of both inmates and correctional staff, shortens the response time for attending to situations that may arise, and frees staff time from opening doors for inmates.  *Id.*  Additionally, having cell doors open speeds up the routine check of cells.  *Id.*  "Staff are be [sic] able to check and see what is going on quickly without having to request for security staff in the control room to open every cell door."  Ex. M (doc. 28-2, pp. 35-36).

Defendant Moore also filed an affidavit.  She states that in her former position as Correctional Services Assistant Administrator (the position she held at the time of the events in question), she reviewed inmate grievance appeals to ensure the "formal grievance was answered correctly."  Ex. N (doc. 28-2, pp. 37-38).  Defendant Moore had no authority to change institutional policies or practices, but denied Plaintiff's formal grievance because the answer he received appropriately addressed the concerns raised therein.  Ex. N (doc. 28-2, p. 38).  While Plaintiff filed one grievance appeal to the Office of the Secretary, he did not submit an appeal on or about August 10, 2006, as he claimed in the complaint.  *Id.*

Defendant Dickens filed an affidavit which essentially repeats the affidavit submitted by Defendant Moore.  Ex. O (doc. 2802, p. 40, *et seq.*).

**Analysis**

The facts of this case are not disputed.  The question to be resolved is whether the cell door policy violates Plaintiff's federal constitutional rights.  It plainly does not.

### First Amendment rights

To the degree Plaintiff's second amended complaint can be construed as alleging a violation of his First Amendment rights, either in the religious context or in access to the courts, there is no evidence to support that claim.  There is no federal constitutional right to a grievance system, or to receive responses to grievances.[2]  Further, even if there were, there is no evidence that any grievance Plaintiff submitted was not responded to by prison officials.

Though Plaintiff's religious beliefs may compel him to more modesty and privacy when using the toilet, he may comply with his beliefs by the use of a towel or blanket on his lap to shield himself from those who may be passing by his cell at that time.  Defendants have shown that this policy furthers their interest in security and efficiency, both of which are compelling interests.  Furthermore, Plaintiff has provided no evidence in support of his religious claim, and has not identified his religion or explained how he is

---

[2] It has been uniformly held that the mere existence of a prison grievance procedure confers no liberty interest entitled to due process protection. <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001); <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988); <u>Ouzts v. Cummins</u>, 825 F. 2d 1276 (8th Cir. 1987).  Thus, a failure to process a grievance according to the specified procedures is not actionable as a violation of constitutional rights under § 1983.  <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993).

"substantially burdened" in the exercise of his religion.  As Plaintiff has not supported

this claim with any evidence, and because Defendants have shown a compelling

interest which justifies the policy, summary judgment should be granted in Defendants'

favor on all First Amendment claims and the RLUIPA claim.

**Eighth Amendment claim**

"Although the United States Constitution does not require comfortable prisons,

neither does it permit inhumane ones."  Farrow v. West, 320 F.3d 1235, 1242 (11th Cir.

2003), *citing* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d

811 (1994).  A prisoner's treatment and the conditions under which he is confined is

governed by the Eighth Amendment, and its prohibition against cruel and unusual

punishment.  Farrow, 320 F.3d at 1242, *citing* Helling v. McKinney, 509 U.S. 25, 31, 113

S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).  Although the Eighth Amendment provides

protection for a prisoner, does not "authorize judicial reconsideration of 'every

governmental action affecting the interests or well-being of a prisoner.' "  Campbell v.

Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999), *quoting* Whitley v. Albers, 475 U.S. 312,

319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1988).  "If prison conditions are merely

'restrictive and even harsh, they are part of the penalty that criminal offenders pay for

their offenses against society.' "  Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11th Cir.

2004), *quoting* Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69

L.Ed.2d 59 (1981).

To demonstrate that the conditions under which a prisoner is confined rises to

the level of an Eighth Amendment violation, Plaintiff must show "the wanton and

unnecessary infliction of pain."  Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508,

2514, 153 L.Ed.2d 666 (2002); Farrow, 320 F.3d at 1242; Campbell, 169 F.3d at 1362.

To do so, he must demonstrate an objective component - that the condition he

complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v.

McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).  That means

Plaintiff must show the challenged prison condition is "extreme" and poses "an

unreasonable risk of serious" damage or harm.  Hudson, 503 U.S. at 8, 112 S.Ct. at

999; Chandler, 379 F.3d at 1289-90.  Plaintiff must also demonstrate a subjective

component - that prison officials acted with "deliberate indifference" to his plight.  Put

another way, even though they knew of an excessive risk to inmate health or safety, the

disregarded the risk.  Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; Hudson, 503 U.S. at

8, 112 S.Ct. at 999; Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115

L.Ed.2d 271 (1991).

It is also well established law that "convicted prisoners do not forfeit all

constitutional protections by reason of their conviction and confinement in prison."  Bell

v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).  Yet, a

prisoner's rights are not absolute.  Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475,

149 L.Ed.2d 420 (2001); see also Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254,

2259, 96 L.Ed.2d 64 (1987).  "Lawful incarceration brings about the necessary

withdrawal or limitation of many privileges and rights, a retraction justified by the

considerations underlying our penal system."  Price v. Johnston, 334 U.S. 266, 285, 68

S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).  Inmates clearly retain protections afforded by

the Constitution, but such rights may be limited by many considerations in the prison

setting, "including deterrence of crime, rehabilitation of prisoners, and institutional

security."  Pell v. Procunier, 417 U.S. 817, 822-23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); Procunier v. Martinez, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810-11, 40 L.Ed.2d 224 (1974), *cited in* O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

It is also well established that running a penal institution is a complex and difficult undertaking.  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977).  Courts must give deference to the decisions of prison administrators who are in a better position to understand the volatile prison environment and act to prevent disorder.  Procunier, 416 U.S. at 405, 94 S.Ct. at 1807; Thornburgh v. Abbott, 490 U.S. 401, 413 , 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989).  Accordingly, a federal court must not unnecessarily involve itself in matters of prison administration.  Shaw, 532 U.S. at 230-31, 121 S.Ct. at 1480.

The issues in this case turn on the administration of a particular prison.  The officials have provided a number of justifications for the open cell door policy, including efficiency as well as safety.  Each position is supported by common sense reasoning, and Plaintiff has failed to provide evidence or argument contradicting those reasons. Most importantly, Plaintiff has failed to present evidence showing that requiring cell doors to remain open violates his Eighth Amendment rights.  That is especially true considering the fact that Plaintiff is fortunate enough to have a single person cell.  If Plaintiff were in an "open population" institution, he would not have a door to close at all. Indeed, Plaintiff has an option of removing himself from other inmates and retreating into his cell.  That is an option many inmates lack entirely.  Even if Plaintiff cannot close his door to obtain the quiet he seeks, he may still retreat into his cell.  The fact that the

benefit of having a single cell room is diminished by the inability to close the door at will is not of constitutional concern.

Plaintiff's fear that if he feels threatened by another inmate, he could retreat to his cell and lock his door while waiting for an officer to come resolve the situation also does not present a constitutional violation. For many inmates, there is no cell available for retreat and, if there is no constitutional deficiency in that situation, there cannot be one in this situation. There is no evidence that officers are not relatively close by to provide for Plaintiff's safety, or that if Plaintiff has knowledge that he is in danger from another inmate he could request protective custody. The inability to close a cell door is not Plaintiff's greatest protection and Plaintiff has not demonstrated that this policy violates his constitutional rights.

The loss of property, allegedly stolen by other inmates, is also not enough. The loss of personal property while in prison does not implicate any federal constitutional right.[3] Further, even if there were a federal claim, Plaintiff may store his property in a locked footlocker. This claim is without merit.

Noise is a limitation implicit in prison. Plaintiff is housed in a facility with 80-90 other prisoners. It must be expected that there will be some noise, at least during day

---

[3] If personal property of an inmate was taken and not returned through the negligence of a defendant, there can be no finding of an unconstitutional deprivation of property. Daniels v. Williams, 474 U.S. 327 , 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Further, if the taking of property was either a random or an unauthorized intentional deprivation, then the availability of state post-deprivation remedies satisfies due process requirements, where it is impracticable for the state to provide pre-deprivation process and the person who has been deprived of property can obtain full compensation for his deprivation. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1980, 68 L.Ed.2d 420 (1981), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Florida provides an adequate post-deprivation procedure for monetary compensation for the alleged deprivation. Fla.Stat. § 768.28.

time hours.  Plaintiff has no constitutional right to quiet time or to escape the noise of others, absent a showing of deliberate indifference to a serious medical need or wanton infliction of serious harm.  There is no evidence that prison officials do not enforce quiet hours during the time in which Plaintiff would normally sleep, and his inability to close a cell door to find solitude is insufficient to demonstrate an Eighth Amendment claim. Summary judgment should be granted on all Plaintiff's Eighth Amendment claims.

**Privacy and Due Process claim**

There is one claim remaining, and more problematic.  Plaintiff's complaint alleged that the inability to close the door while using the toilet is degrading and embarrassing as inmates and correctional officers of the opposite sex can view him naked.  Plaintiff claims this practice violates his due process rights.  Doc. 10, p. 16.

Plaintiff has the benefit of a single person cell.  For the many inmates who occupy double man cells or are in open population, the concern over a lack of privacy must be even greater as the lack of privacy is greater.  It is a harsh reality of incarceration and the necessity of ensuring security that precludes more privacy in the use of the toilet, even in one's own cell.  Plaintiff's benefit still provides him with understandable embarrassment and dissatisfaction.  Thus, his claim will be considered on the merits.

Plaintiff retains some level of privacy, despite his incarceration.  In a case of first impression in the Eleventh Circuit, Fortner v. Thomas, *infra,* the court held that "a prisoner retains a constitutional right to bodily privacy."  Fortner v. Thomas, 983 F.2d 1024, 1026 (11th Cir. 1993).  Male inmates at the Georgia State Prison alleged that "several correctional officials, violated their constitutional rights of privacy and due

process."  983 F.2d at 1026.  The inmates sought injunctive relief which would prohibit "female correctional officers from assignments that allow the officers to view the [inmates] nude in their living quarters, including their use of the showers and the toilet." *Id.*  The court was persuaded to join with the Second, Fourth, and Ninth circuits who had previously recognized a prisoner's right to bodily privacy.  983 F.3d at 1030.  Nevertheless, after finding that right, the Court remanded the case to the district court to apply the Turner v. Safley test[4] to determine whether the regulation challenged "unreasonably impinge[d] on the prisoners' constitutional rights to bodily privacy."  983 F.2d at 1026.

Another case concerning bodily privacy is Hardgrove v. Clark, 2007 WL 1746922 (N.D. Fla., June 15, 2007).[5]  There, a prisoner claimed that female correctional officers could view him naked as he showered.  This case concluded that based on Fortner, there is a limited right to privacy in not exposing oneself involuntarily, but there was no evidence that Plaintiff was forced to expose himself.  2007 WL 1746922, at *5.

Defendants here note the Fortner case, and then assert that "the remaining question is whether the undisputed material facts in this case demonstrate a violation of

---

[4] The Turner factors are: "(a) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (b) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (c) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally; and (d) whether the regulation represents an 'exaggerated response' to prison concerns."  Fortner v. Thomas, 983 F.2d at 1030, *quoting* Harris v./ Thigpen, 941 F.2d 1495, 1516 (11th Cir. 1991) (quoting Turner, 482 U.S. at 89-91, 107 S.Ct. at 2261-63).

[5] As this is an unpublished opinion, the case will be attached to this report and recommendation for the *pro se* Plaintiff's benefit.

such right." Doc. 28, p. 19. Defendants argue that Plaintiff does not have to expose his genitals and may preserve his privacy by the use of a blanket to cover himself. *Id.* Plaintiff has failed to come forward with any evidence to contradict that assertion. Plaintiff has provided no evidence to show how his rights to privacy are violated in light of the permission to use a blanket or towel across his lap. This privacy claim, founded upon the Due Process Clause, must also fail as Plaintiff has not demonstrated the violation of a constitutional right.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 30, be **GRANTED** as to all claims, and that the order adopting this report and recommendation direct the Clerk of Court to enter judgment in Defendants' favor.

**IN CHAMBERS** at Tallahassee, Florida, on February 28, 2008.


**s/     William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

## Attachment to Report and Recommendation in Case No. 4:06cv390-RH/WCS

Hardgrove v. Clark
N.D.Fla.,2007.
Only the Westlaw citation is currently available.
United States District Court, N.D. Florida,
Tallahassee Division.
Derrick HARDGROVE, Plaintiff,
v.
Howard CLARK, James V Crosby, Jr, Hamburger, Lonnie Holmes, Kyler, S Milliken, J L Reid, Defendants.
**No. 4:04-cv-00294-MP-AK.**

June 15, 2007.

Derrick Hardgrove, Sneads, FL, pro se.
Wendy Elaine Benner-Leon, Attorney General, Tallahassee, FL, for Defendants.

### *ORDER*

MAURICE M. PAUL, Senior District Judge.

**\*1** This matter is before the Court on Doc. 69, Report and Recommendation of the Magistrate Judge, recommending that summary judgment be granted in favor of the defendants. The time for filing objections has passed and none have been filed. The plaintiff filed a complaint, alleging a violation of his privacy rights because a female correctional officer could observe him while he showered. The defendant moved for summary judgment and provided sworn affidavit testimony that prisoners could not be seen while showering. The plaintiff was informed of the burden in opposing summary judgment but failed to file any response. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Report and Recommendation of the Magistrate Judge is adopted and incorporated herein.

2. This action is DISMISSED, and the clerk is directed to close the file and to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and constitutes a strike within the meaning of 28 U.S.C. § 1915(g).

**DONE AND ORDERED.**

### *REPORT AND RECOMMENDATION*

ALLAN KORNBLUM, United States Magistrate Judge.

Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 alleging that his rights to privacy have been violated by failing to provide privacy screening during his shower, thereby exposing him to the view of a female correctional officer. (Doc. 9). Defendants have filed a special report (doc. 32), which has been construed as a motion for summary judgment. (Doc. 46). Plaintiff was advised of his obligations in responding to the motion (doc. 45), and has filed a response. (Doc. 48). He also requested discovery (docs. 49 and 52), which was ultimately granted (doc. 54), but he has not filed a response or requested leave to file an additional response after service of Defendants' responses to his discovery. (*See* Doc. 62).

## I. Allegations of the Amended Complaint (doc.9).

Plaintiff claims that Jefferson Correctional Institution does not have privacy screening in their showers and Defendant Kyler, a black female corrections officer, was allowed to supervise him while he took a shower. Plaintiff claims that he told Defendants Warden Lonnie Holmes, Assistant Warden Howard F. Clark, Colonel J.L. Reid, Captain Hamburger, and S. Milliken that Jefferson CI was not in compliance with regulations regarding the privacy screening, but they did not correct the problem.

Plaintiff has attached to his complaint the grievance measures he took and a copy of Florida Admin. Code Sections 33-208.301 and 33-602.20, specifically Procedure 602.036, which provides that:

Inmates will not be supervised by officers of the opposite gender while inmates are showering or in the toilet area unless appropriate privacy screening is provided to obscure from view the breasts of female inmates and the genitalia and buttocks of both male and female inmates.

In his grievances to Defendants Captain Hamburger, J.L. Reid, Howard Clark, and S. Milliken, Plaintiff asserts that there is no privacy screening on the stalls at Jefferson and female officers, specifically Defendant Kyler, observed him taking a shower.

## II. Standard of Review

**\*2** A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Nolen v. Boca Raton Community Hospital, Inc.*, 373 F.3d 1151, 1154 (11th Cr.2004), *citing Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir.2003); *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir.2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Celotex*, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir.1996).

"Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir.1997), *cert. denied* 522 U.S. 1126, 118 S.Ct. 1074, 140 L.Ed.2d 133 (1998), *quoting Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). *Owen v. Wille*, 117 F.3d at 1236; *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, *Celotex, supra* at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. *Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir.1965).

### III. Defendants' Rule 56(e) evidence

a) *Inmate Population Information Detail (Exhibit A)*

Plaintiff is presently serving a life sentence in close custody status.

b) *Inmate Disciplinary Actions (Exhibit B)*

Plaintiff has an extensive history of disciplinary actions at a number of institutions primarily for disobeying orders and regulations, being in unauthorized areas, and lying to staff.

c) *Affidavit of Johnny Reid (Exhibit C)*

**\*3** Mr. Reid is Assistant Warden of Operations at Jefferson CI and attests to the structure and operation of the housing units at the institution. According to Reid, there are several open bay dorms, designated A through G dorms, which resemble barracks-style housing. Two other dormitories, H and Y dorms, are single cells housing two inmates per cell. Three wings in H dorm are for general population and one wing is secure housing for special confinement cases. Y dorm is for inmates in disciplinary confinement. Male and female officers are assigned to the open bay dorms and the wings for general population in H dorm, two per shift, and one will always be a male.[FN1] Occasionally, one of the two officers will be out of the dorm to assist with other duties such as meals, supervision in the recreation yard, or assisting with showers in confinement or medication pick-up. One officer always remains in the dorm. Showers are allowed in the open bay dormitories from 5:00 p.m. to 10:00 p.m. Monday through Friday and 8:00 a.m. through 10:00 p.m. on weekends. The shower area in the open bay dorms are described as:

FN1. Only male officers are assigned to the secure housing areas of H dorm and Y dorm.

Each shower area in open bay dorms has 8 shower heads lined along a single wall with privacy dividers between each shower head. The dividers, or privacy walls, are 4' feet 8-1/4 inches wide and create separate stalls or spaces for inmates to shower in.

Reid adds:

Inmates are expected to cover themselves appropriately while in route to and from the shower area. Inmates in open bay dorms may maximize their privacy in the shower by positioning themselves in the front part of the shower stall and facing forward (toward the shower head). In so doing, inmates can completely obscure the viewing of their genitals by other inmates or correctional officers. Inmates may also maximize their privacy in the showers by selecting the shower stalls that are furthest from the officers' station. A person in the officer's station cannot view the torso of an inmate in the last five stalls because of the angle, distance and the privacy walls (assuming the inmate remains within the privacy walls and positions himself near the shower head so as to obscure viewing of his torso from the officer's station). Inmates have the ability to maintain complete privacy through their selection of these stalls and proper positioning within the privacy walls.

Since the filing of the complaint, shower curtains have also been installed in the first three stalls providing additional privacy for those stalls nearest the officers' station. Reid attests that female officers may work in the open bay dorms during shower time and might scan the shower area for security or safety concerns, but unless there was an emergency any situation that would allow for an officer to view the genitals of an inmate would be conducted by the male officer. According to housing records, Plaintiff was moved on March 23, 2004 (the date in question) from G dorm to H dorm

(a single cell) where he remained until his transfer to Florida State Prison. According to Reid, H dorm has individual shower cells with grill gate doors which are not visible from the officers' station and inmates may hang towels on the door of the shower cell when showering.

**\*4** Pictures of the shower stalls in G dorm as seen from the officers' station are attached to Reid's affidavit which show significant views are blocked because of the position of the stalls, the divider walls between them, and the curtains.

d) *Affidavit of Josephine Kyler (Exhibit D)*

According to Defendant Kyler she was working the third shift from 4:00 p.m. to midnight on March 23, 2004 in G dorm. She has attached her notes from the housing log that shows she worked with Officer Emanuel on that date and he left the compound at 4:48 to check in new inmates. At 5:00 she did a routine security check and five new inmate were processed in and assigned to bunk beds. At 5:30 inmates on G-I side were released to dinner, and at 5:40 inmates on G-II were released to dinner. At 6:00 she checked Plaintiff and another inmate out of G dorm and moved them to H dorm. By 6:44 Officer Emanual was back on the dorm. She attests that although inmates may take showers between 5:00 and 10:00 p.m. most do not take showers until after dinner. She does not recall Plaintiff taking a shower at 5:26 that day, but according to her notes she would have been in the officers station doing paperwork on the incoming inmates and preparing to release inmates into the dining hall. If she were in the officers' station and Plaintiff was taking a shower she would have given him only a cursory look from the station at the stalls and would never have looked directly at him while he was showering.

The housing unit log supports Kyler's chronology of events with the exception that the log shows G-II went to dinner first at 5:30 and G-I followed at 5:40.

## IV. Plaintiff's Response

Plaintiff states that Defendant Kyler concedes that she was alone in G dorm at the time he was taking a shower and this proves that she saw him showering. He also notes that she admits that she conducted visual checks of the shower area and this, too proves his claim. Plaintiff's argument is that Defendant Kyler should not have been assigned to this duty, should not have been left alone, and should not have been allowed to view the shower area, which he continues to assert had no privacy screening. He further contends that his complaints about this resulted in his transfer on March 23, 2004, to close confinement on H dorm, as Reid confirms in his affidavit.

Plaintiff also raises issues in his response not raised in his complaint about retaliation and false disciplinary reports that will not be considered here.

No evidentiary material was submitted with his response.

## V. Analysis

### a) *Right of Privacy*

There is no express "right of privacy" in the United States Constitution, but courts have fashioned such a right from the Fourth Amendment protections from unreasonable searches and extended this "right" to prisoners in limited contexts. *See Bell v. Wolfish,* 441 U.S. 520, 558-560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court declined to extend the Fourth Amendment proscriptions against unreasonable searches to a prisoner's cell, *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), but the Eleventh Circuit has recognized that prisoners retain some fundamental rights to privacy. *Harris v. Thigpen,* 941 F.2d 1495, 1513 n. 26 (11th Cir.1991). Later, the Eleventh Circuit joined other circuits to hold that a prisoner retains a "limited constitutional right to bodily privacy." *Fortner v. Thomas,* 983 F.2d 1024, 1030 (11th Cir.1993) (prisoners have very narrow privacy right involving "special sense of privacy in their genitals" and "involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating."). The Eleventh Circuit has declined to extend *Fortner* to mean that inmates have the same rights to bodily privacy as free persons and have held firm that this right is limited and should be evaluated on a case-by-case basis. *Padgett v. Donald,* 401 F.3d 1273, 1279 (11th Cir.2005).

**\*5** Thus, the Court acknowledges that Plaintiff had a right to privacy in not exposing himself involuntarily to Defendant Kyler, and the question now becomes was he in fact forced to expose himself to her. This is where Plaintiff's case falls short.

Plaintiff has come forth with no evidentiary materials to support his claim that the shower stalls had no privacy screening and to specifically refute the affidavits and pictures submitted by the Defendants which show that there were walls between each of the stalls and they were positioned in such a way that someone in the officers' station could not view a showering inmate if he chose to stand closer to the shower head, as set forth in the affidavit of Johnny Reid. Plaintiff's argument hinges entirely on the premise that his privacy rights were violated simply by the fact that Defendant Kyler, being female, was on duty by herself while inmates were showering. As the case law provided by Defendant shows, this is not the law. *See Somers v. Thurman,* (Exhibit E) (Ninth Circuit finds cross gender monitoring reasonable); *Johnson v. Tremper,* (Exhibit F) (Second Circuit finds that prisoner failed to state a claim hinged on fact that he could have prevented exposure to female guard by stepping behind shower curtain); *Robinson v. Boulier,* (Exhibit G) (Eighth Circuit finds that surveillance of showering inmates by female guards reasonably related to legitimate penological interests); *Thomas v. Shields,* (Exhibit H) (Fourth Circuit finds that cross gender monitoring of inmates taking showers does not violate privacy).

Plaintiff has come forward with no materials, not even his own affidavit, to refute the affidavits submitted by Defendant that there are in fact privacy screens or rather walls to protect an inmate from involuntary exposure to female guards. It is not sufficient for Plaintiff to make the conclusory statement that there are no privacy screens in the showers when Defendant has provided pictures and affidavits describing in detail the structure of the shower area that clearly refutes Plaintiff's claim that he could not hide from view his genitals and buttocks. Thus, the undersigned is of the opinion that Plaintiff has failed to come forward with evidentiary material demonstrating that there is a genuine issue of material fact on this claim, and therefore, Defendants should be granted summary judgment on this claim.

### b) *Qualified Immunity*

Qualified immunity protects a government official who was performing discretionary functions from an award of civil damages in a § 1983 action unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The first step is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999), *citing Siegert v. Gilley,* 500 U.S. 226, 232 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and *County of Sacramento v. Lewis,* 523 U.S. 833, 841, n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).


**\*6** It is the opinion of the undersigned that Plaintiff has failed to show the deprivation of a constitutional right, and thus, his claims would fail under the first step of this analysis. However, assuming that the facts presented in the complaint did allege a violation of Plaintiff's privacy rights, the second step in the inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity does not require that there be materially similar cases, only that the unlawfulness of an act or omission be apparent in light of pre-existing law. *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *reversing Hope v. Pelzer,* 240 F.3d 975 (11th Cir.2001). Accordingly, the question to ask is whether prison officials have been given fair warning that their actions or omissions are unconstitutional. *Id.* If the law does not put the officer on notice that her conduct would be clearly unlawful, summary judgment based on qualified immunity should be granted. *Saucier,* 533 U.S. at 202.


As set forth above, the law on bodily privacy is not well settled. Further, the state regulations of which Defendant Kyler would have been on notice clearly allowed for female officers to work at corrections institutions and to monitor male inmates during showering, with the proviso that privacy screening be provided. Thus, there was nothing to put Defendant Kyler on notice that her conduct would be unlawful, and therefore an additional ground for dismissing Defendant Kyler would be that she is entitled to qualified immunity on this claim.


c) *Claims against remaining Defendants*


Defendants construe Plaintiff's claims as based on respondeat superior, which would clearly be grounds for dismissal since Plaintiff has not alleged that any of these defendants, by their supervisory positions, had any causal connection to Defendant Kyler's alleged unconstitutional viewing of Plaintiff. *See Swint v. City of Wadley,* 51 F.3d 988, 999 (11th Cir.1995); *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991); *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986). As the Court interprets Plaintiff's claim against these Defendants, he complains that he put them on notice by his grievances that there were no privacy screens on the showers, and their refusal to put screens up violated his constitutional rights. Since Plaintiff has failed to support his claim that there is no privacy screening and he is forced to expose himself to female guards, this claim fails, too.


In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 46) be **GRANTED,** and this cause dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The order adopting this report and recommendation should also direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and constitutes a strike within the meaning of 28 U.S.C. § 1915(g).


**\*7 IN CHAMBERS** at Gainesville, Florida, this *16th* Day of March, 2007.


N.D.Fla.,2007.
Hardgrove v. Clark
Slip Copy, 2007 WL 1746922 (N.D.Fla.)